1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11
12  HANK POLLOCK,

13          Plaintiff,

14      v.

15  JOSEPH LEHMAN,

16          Defendant.

Case No. C05-5385RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**June 30th, 2006**

17
18          This Civil Rights action has been referred to the undersigned Magistrate Judge pursuant to

19  Title 28 U.S.C. § 636(b)(1)(B).  Plaintiff contends he had a liberty interest in release on his earned

20  early release date and was entitled to due process prior to a decision not to release him. Before the court

21  is defendants' motion for summary judgement.  (Dkt. # 12).  Plaintiff has not responded, but did file

22  a document titled "Clarification of fact," in which he states the exhibits to the summary judgment

23  show he was a member of a protected group entitled to release.  (Dkt. # 13).  Under Local Rule 7

24  (b)(2) failure to file papers in opposition to a motion may be deemed by the court as an admission the

25  motion has merit.

26          The named defendant is Joseph Lehman, former Secretary of the Department of Corrections.

27  (Dkt. # 2).

28  REPORT AND RECOMMENDATION 1

1

<u>FACTS</u>

2

Plaintiff has not contradicted defendants facts which are adopted as follows:

3

     Hank Pollock, also known as Andrew Drescher, was previously in the custody of
the Washington State DOC pursuant to a judgment and sentence entered in Thurston
County Superior Court. On, June 2, 2003, Mr. Pollock pled guilty to one count of

4

Indecent Liberties. Exhibit 1, Declaration of Virginia Shamberg, Attachment A,
Judgment and Sentence in <u>State v. Drescher a.k.a. Pollack</u>[sic], Thurston County

5

Superior Court Cause No. 93-1-474-9. The trial court imposed a period of 120 months
confinement with a two year term of community placement "or up to the period of earned

6

early release awarded under RCW 9.94A.150(1) and (2), whichever is longer" upon his

7

release. <u>Id</u>.

8

     Mr. Pollock's earned early release date was July 11, 2000. Exhibit 2, Declaration
of Tammy Laveaux, Attachment A, Legal Face Sheet. Mr. Pollock's sentence expired on

9

May 15, 2003. <u>Id</u>. Mr. Pollock was released from DOC custody on May 15, 2003. <u>Id</u>. Mr.
Pollock is currently a resident at the Special Commitment Center (SCC), a Department of
Social and Health Services facility on McNeil Island. According to Mr. Pollock's

10

deposition testimony, he is still awaiting trial for civil commitment as a sexually violent

11

predator. Exhibit 3, Declaration of Sara J. Olson, Attachment A, Deposition Transcript of
Hank Pollock, page 7:line 3-10.

12

13

     Inmates who have a community custody requirement in their judgment and
sentence and are required by law or their judgment and sentence to have a release plan
approved by DOC, may be released to community custody on or after their earned early

14

release date only if their release plan is approved by DOC and the statutory notification
requirements for the release of such offenders are satisfied. Exhibit 4, Declaration of

15

Mary Leftridge Byrd ¶ 2. Under DOC policy 350.200, an inmate's transition into the
community on community custody status follows the approval of an inmate's proposed

16

release plan, including a proposed release address which does not violate the conditions
of the inmate's judgment and sentence, does not place the inmate at risk to re-offend, and

17

does not present a risk to victim safety or community safety. <u>Id</u>. ¶ 4; <u>See also</u> Exhibit 4,
Attachment A, DOC Policy 350.200.

18

19

     DOC Policy 350.200 provides the process for an inmate to secure DOC approval
of a release plan in order to be released to community custody. <u>Id</u>. ¶ 3. DOC Policy

20

350.200 is available to all inmates. <u>Id</u>. In determining whether an inmate's proposed plan
to release to community custody is acceptable, DOC staff conduct a review of all relevant
documentation including, but not limited to, the inmate's judgment and sentence, field

21

files, classification documents, psychological/psychiatric and forensic psychologist
reports, the inmate's assigned risk management classification, and the inmate's criminal

22

history summary. <u>Id</u>. ¶ 5.

23

     Proposed release plans for possible transfer to community custody status for sex
offenders are investigated by a Classification Counselor or Community Corrections

24

Officer (CCO) to determine if the plan is viable. Exhibit 5, Declaration of Kimberly
Acker ¶ 7. Minimum requirements include: an actual location of a physical address, not a

25

contact address or post office box; the occupant/owner of the property is knowingly
allowing the sex offender to reside there; the sex offender intends to physically reside in

26

the residence; and the placement does not put the offender in violation of his/her
conditions of release. <u>Id</u>. The proposed sponsor shall be informed of the offender's

27

criminal history, sex offender notification level, community notification, and conditions

28

REPORT AND RECOMMENDATION 2

1   of release. Id. The Classification Counselor or CCO will investigate. Id.

2       The CCO will assess the degree of risk for victims and potential victims of
3   similar age or circumstances when investigating the proposed release plans for sex
    offenders. Id. See also Exhibit 4, Attachment A, at 10-11. A release plan will be denied if
    the classification Counselor or CCO determines that the plan will place the offender in
4   circumstances where there is a likely risk to reoffend. Exhibit 5 ¶7. See also Exhibit 4 ¶
5   4.

6       If a release plan is denied for an offender who appears to meet the definition of a
    sexually violent predator, as determined by the ESR SVP Subcommittee, the offender
    may submit a new or revised plan for DOC's review. Exhibit 5 ¶ 15. See also Exhibit 6,
7   Declaration of Ruben Cedeño ¶ 9. If the sex offender is ultimately unable to locate a
    viable release address or all of the offender's proposed plans for possible transfer to
8   community custody status are denied, he/she shall be released on the date his/her
    maximum sentence is reached. Exhibit 5 ¶ 15; Exhibit 6 ¶ 9. Counselors continue
9   working with inmates up to their maximum release date encouraging inmates to find the
    best possible place for them to go, even though once inmates have reached their
10  maximum release date, they must be released without regard to their plan. Exhibit 6 ¶ 9.

11      According to Mr. Pollock's sworn testimony, Mr. Pollock submitted two release
    plans. According to Mr. Pollock's testimony, he submitted a release plan in May of 2000
12  to the address of Donna Gass. Dep. Transcript 10:21-11:6. Mr. Pollock admits that his
    plan was subsequently denied because his release address was the same as that of another
13  offender who was Ms. Gass's son. Dep. Transcript 11:7-15. Mr. Pollock admits that he
    was informed that his plan had been denied approximately a month after it was
14  submitted. Dep. Transcript 12:1-9.

15      According to Mr. Pollock's testimony, he submitted a release plan in October of
    2003 to the address of his adoptive parents, Steve and Judy Drescher, in Portland. Dep.
16  Transcript 12:10-24. Mr. Drescher states that he never heard whether this plan was
    accepted or denied. Dep. Transcript 12:25-13:17. However, Mr. Drescher acknowledges
17  researching two additional addresses after submitting the release plan for his adoptive
    parents' home. Dep. Transcript 14:1-19. Finally, Mr. Pollock admits that he told his
18  counselor that he wanted to "max-out", so he did not make any further efforts to
    determine a release plan. Dep. Transcript 14:20-15:10.
19
20  (Dkt. # 12, pages 2 to 5).

21                                  DISCUSSION

22      Washington State's complex sentencing system allows some inmates to

23  earn time off their sentence by programing and good behavior while incarcerated.  Other inmates, like

24  Mr. Pollock, may not earn time off their sentences but instead may become eligible for placement in a

25  community under supervision in lieu of earning good time or earned time.

26      RCW 9.94A.728 (2) provides:

27      No person serving a sentence imposed pursuant to this chapter and committed to the
        custody of the department shall leave the confines of the correctional facility or be

28  REPORT AND RECOMMENDATION 3

released prior to the expiration of the sentence except as follows:

...

(2)(a) A person convicted of a sex offense or an offense categorized as a serious violent offense, assault in the second degree, vehicular homicide, vehicular assault, assault of a child in the second degree, any crime against persons where it is determined in accordance with RCW 9.94A.602 that the offender or an accomplice was armed with a deadly weapon at the time of commission, or any felony offense under chapter 69.50 or 69.52 RCW, committed before July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;

(b) A person convicted of a sex offense, a violent offense, any crime against persons under RCW 9.94A.411(2), or a felony offense under chapter 69.50 or 69.52 RCW, committed on or after July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;

(c) The department shall, as a part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;

(d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement;

When an inmate is first transferred to the Department of Corrections, staff at the Department calculate at least three possible release dates for the inmate. The first of these dates is the maximum release date. A maximum release date is the date an inmate will be released because they have served the entire sentence imposed. The second date is an earned early release date, ERD. This is the date an inmate may be released if they earn all available sentence reductions and do not lose earned time for misbehavior. Release on this date is not automatic for all inmates. The third date the department calculates is an adjusted release date. This is the projected date when an inmate may be eligible for release if they lose no further good time or earned time. This date along with the earned early release date changes when an inmate does not earn or loses a possible reduction in their sentence. By statute an

REPORT AND RECOMMENDATION 4

1   inmate cannot receive earned early release credits before they have been earned.  "The correctional

2   agency shall not credit the offender with earned release credits in advance of the offender actually

3   earning the credits."  See, RCW 9.94A.728 (1).

4          Certain classes of inmates have periods of supervision at the end of their incarceration.  These

5   inmates are not allowed earned early release because of the nature of their crime.  These inmates receive

6   supervision by way of community placement or community custody "in lieu of" earned early release.

7   Plaintiff is a person whose Judgment and Sentence included community placement or community

8   custody following release.  (Dkt. # 12 Exhibit 1, Attachment A).  Defendants contends plaintiff was not

9   entitled to general release on his earned early release date.  Plaintiff has not come forward with any

10  evidence to contradict this assertion.  Thus, this action deals with an inmate who reached his earned early

11  release date and was not released on that date because  community custody or community placement was

12  imposed in the Judgment and Sentence.

13         A.     The standard of review.

14         Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that

16  there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of

17  law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the

18  nonmoving party fails to make a sufficient showing on an essential element of a claim on which the

19  nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

20         There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

21  rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

22  475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not

23  simply "some metaphysical doubt.").  See also Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute

24  over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring

25  a judge or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S.

26  242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626,

27  630 (9th Cir. 1987).

28  REPORT AND RECOMMENDATION 5

1    The determination of the existence of a material fact is often a close question.  The court must

2    consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the

3    preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc.,

4    809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving

5    party only when the facts specifically attested by the party contradicts facts specifically attested by the

6    moving party.  Id.

7    The nonmoving party may not merely state that it will discredit the moving party's evidence at

8    trial, in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809

9    F.2d at 630.(relying on Anderson, supra).  Conclusory, nonspecific statements in affidavits are not

10   sufficient, and "missing facts" will not be "presumed."   Lujan v. National Wildlife Federation, 497 U.S.

11   871, 888-89 (1990).

12       B.    Analysis.

13   The court begins by noting that an inmate has no constitutional right to release before expiration

14   of the sentence.  Greenholtz v. Inmates of Nebraska, 442 U.S. 1 (1979).  Nor have the Washington state

15   appellate courts recognized an independent state created interest in amassing early release credits.  In Re

16   Galvez, 79 Wash. App. 655 (1995).  This does not end the court's analysis because in this case the court

17   is not concerned with the granting or denial of earned early release time.  Under the facts of this case the

18   plaintiff had been granted the credits or time off his sentence and was eligible for release, subject to the

19   approval of the release plan by the Department of Corrections and whatever public notification may be

20   mandated by state law.  The court must consider whether the Due Process Clause of the 14th Amendment

21   requires a hearing prior to denial of a release plan.

22   The court cannot overemphasize that the interest at issue in this case must be a state created

23   liberty interest and is not an interest found under the 14th Amendment Due Process Clause itself.

24   Normally the court would first determine whether there is in fact a state created liberty interest.  The

25   Washington State Court of Appeals found there to be a "limited liberty interest" in Crowder, but the

26   court did not define what a "limited liberty interest" is and approved post deprivation remedies which

27   only included the Department helping Mr. Crowder to formulate a plan.  In Re Crowder, 97 Wash App.

28   REPORT AND RECOMMENDATION 6

1   598 (1999).  No hearing of any type was ordered.

2        In Dutcher the same court emphasized it was operating under the State Rule of Appellate

3   Procedure 16.4 which did not require a finding of a constitutional violation and only required a finding

4   of unlawful restraint under state law.  Dutcher 114 Wash. App. at FN 3 and 4; Citing In Re Cashaw, 123

5   Wash. 2d 138 (1994).  Cashaw specifically rejected the contention that procedural rules which are not

6   outcome determinative create a liberty interest protected by due process. In Re Cashaw, 123 Wn 2d. at

7   146.  In Cashaw the Washington State Supreme Court required the Indeterminate Sentence Review

8   Board to follow its own rules and granted relief using the State Rule of Appellate Procedure 16.4.  This

9   grant of relief was not based on a  finding of any constitutional violation.

10        The Washington State Supreme Court in Cashaw was careful to grant relief only on state

11   grounds.  Indeed, the State Supreme Court in Cashaw analyzed what is needed to find a state created

12   liberty interest and found no due process violation in that case.  The State Supreme Court's analysis in

13   Cashaw is instructive regarding what constitutes a liberty interest and when such interests rise to the level

14   of a state created liberty interest protected by the Due Process Clause of the United States Constitution.

15   This court adopts the analysis set forth by the Washington State Supreme Court.  The court stated:

16        Liberty interests may arise from either of two sources, the due process clause and
     state laws. Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675
17   (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir.1986), cert. denied, 481
     U.S. 1069, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). The due process clause of the federal
18   constitution does not, of its own force, create a liberty interest under the facts of this case
     for it is well settled that an inmate does not have a liberty interest in being released prior
19   to serving the full maximum sentence. Greenholtz v. Inmates of Nebraska Penal &
     Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979);
20   Ayers, 105 Wash.2d at 164-66, 713 P.2d 88; Powell, 117 Wash.2d at 202-03, 814 P.2d
     635.
21
        However, as indicated above, state statutes or regulations can create due process
22   liberty interests where none would have otherwise existed. See Hewitt, 459 U.S. at 469,
     103 S.Ct. at 870; Toussaint, 801 F.2d at 1089; Powell, 117 Wash.2d at 202-03, 814 P.2d
23   635. By enacting a law that places substantive limits on official decisionmaking, the State
     can create an expectation that the law will be followed, and this expectation can rise to
24   the level of a protected liberty interest. See Toussaint, 801 F.2d at 1094.

25        For a state law to create a liberty interest, it must contain "substantive predicates"
     to the exercise of discretion and "**specific directives to the decisionmaker that if the**
26   **regulations' substantive predicates are present, a particular outcome must**
     **follow**". Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 463, 109 S.Ct.
27   1904, 1910, 104 L.Ed.2d 506 (1989); Swenson v. Trickey, 995 F.2d 132, 134 (8th Cir.),

28   REPORT AND RECOMMENDATION 7

1          <u>cert. denied</u>, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468 (1993). **<u>Thus, laws that</u>**

2 **<u>dictate particular decisions given particular facts can create liberty interests,</u>**
**<u>but laws granting a significant degree of discretion cannot.</u>**

3 <u>In Re Cashaw</u>, 123 Wn 2d at 144 (emphasis added).

4        The Department has been mandated by statute to implement a system that allows for the

5 possibility of early release.  For some persons the release is automatic when they reach their earned early

6 release date because they have no supervision following incarceration. Inmates like Mr. Pollock, facing

7 community placement or community custody, can earn a potential reduction in sentence and be placed on

8 community placement or community custody at the discretion of the Department of Corrections.

9        The parties may disagree whether the discretion of the Department is unfettered or restricted with

10 regards to what the department may consider but such argument misses the point.  RCW 9.94A.728(2)(d)

11 grants the Department the ability and the discretion to deny a release plan for any person who would

12 receive community custody if the Department determines the plan may violate conditions of a sentence

13 or supervision, may place the offender at risk to reoffend, or presents a risk to victim or community

14 safety.  Thus, whatever limits have been placed on the Department are not outcome determinative and

15 there is no state created liberty interest.  The Department still has a significant degree of discretion in

16 granting or denying release to community placement or community custody.  As the statute itself notes

17 "[t]he department's authority under this section is independent of any court-ordered condition of sentence

18 or statutory provision regarding conditions for community custody or community placement."  RCW

19 9.94A.728 (2)(d).

20        A careful reading of the Washington State Court of Appeals holding in <u>Dutcher</u> shows the court

21 was acting pursuant to state Rule of Appellate Procedure 16.4 and was using the lesser standard of

22 review which did not require a finding of a constitutional violation.  The ruling in <u>Dutcher</u> that the

23 Department must follow the state statutory system and consider plans on the merits does not equate to a

24 finding of a state created liberty interest in release and the holding in <u>Dutcher</u> did not eliminate the

25 Departments discretion.

26        There has been a progression in the State Court of Appeals decisions expanding their

27 terminology and reasoning.  In <u>Crowder</u> the court found only a "limited liberty interest."  <u>In Re Crowder</u>,

28 REPORT AND RECOMMENDATION 8

1   97 Wash. App. 598 (1999).  In <u>Dutcher</u>, the court used the reasoning of <u>Cashaw</u> to grant relief solely on

2   state grounds but, stated the interest was a "limited but protected liberty interest."  <u>Dutcher</u>, 114 Wash.

3   App. at 758.  Now, in a more recent case, the same court is citing <u>Cashaw</u> and <u>Dutcher</u> for the

4   proposition that there is a limited liberty interest protected by due process.  <u>In Re Liptrap</u>, 127 Wash.

5   App. 463, 469  (2005).  To the extent that <u>Liptrap</u>, finds a state created liberty interest in release credits

6   for persons subject to community custody, there was no violation of such an interest under the facts of

7   this case.  A potential for release based on the Department exercising its discretion does not equate to an

8   absolute interest in release that a person with earned time and no post release supervision enjoys.

9          As noted above neither <u>Crowder</u> nor <u>Dutcher</u> found a state created liberty interest.  Under the

10  analysis set forth in <u>Cashaw</u> there is no federally protected interest in this case.  The holding of <u>Dutcher</u>

11  is that an agency follow its own rules and statutes.  While in some cases that may become outcome

12  determinative and raise to the level of a state created liberty interest it is not outcome determinative in

13  this case because of the amount of discretion left with the Department.

14         There is not a state created liberty interest at stake in this case.  The statutes creating the potential

15  of community custody do not set forth any mandate that the Department hold hearings and only mandate

16  the Department consider properly submitted release plans for persons who have reached their possible

17  earned early release date subject to community custody or community placement after release.  Here

18  plaintiff submitted two plans and both were denied.  Accordingly the defendant's motion for summary

19  judgment should be **GRANTED.**   Having reached this conclusion the court does not address the

20  remaining arguments raised by defendant in his motion.

21                                         <u>CONCLUSION</u>

22         For the reasons stated above the court should **GRANT** defendant's motion for Summary

23  Judgment.  A proposed order accompanies this Report and Recommendation.

24         Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

25  parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed.

26  R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of

27  appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule

28  REPORT AND RECOMMENDATION 9

1  72(b), the clerk is directed to set the matter for consideration on **June 30th, 2006**, as noted in the

2  caption.

3

4          DATED this 1st day of June, 2006.

5

6                  /S/ *J. Kelley Arnold*
                J. Kelley Arnold

7                  United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  REPORT AND RECOMMENDATION 10